# No. 15-51164

# In the United States Court of Appeals For the Fifth Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*

v.

CRISTOBAL VELASQUEZ, also known as Little Cris; RAUL RODRIGUEZ, also known as Fat Boy; GEORGE SANCHEZ, also known as Curious; MIKE CASSIANO,
*Defendants-Appellants*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

BRIEF OF DEFENDANT-APPELLANT

Reginald Van Wade
State Bar No. 20649980
123 Meandering Way
Del Rio, Texas 78840
Ph.: 1-830-768-2509
Fax: 1-830-768-2509
ATTORNEY FOR DEFENDANT-APPELLANT

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

### United States v. Mike Cassiano
### Appeal No. 15-51164

The undersigned counsel of record certifies that the persons having an interest in the outcome of this case are those listed below:

1. **Mike Cassiano**, Defendant-Appellant;

2. **Richard L. Durbin, Jr.**, U.S. Attorney;

3. **Joseph H. Gay, Jr.,** Assistant U.S. Attorney;

4. **Erica Benites Giese, Patrick Burke, Ralph Paradiso,** Assistant U.S. Attorneys, who represented Plaintiff-Appellee in the District Court;

5. **Reginald Van Wade,** Attorney who represented Defendant-Appellant in the District Court;

6. **Reginald Van Wade,** Attorney who represents Defendant-Appellant in *this* Court.

This certificate is made so that the Judges of this Court may evaluate possible disqualification or recusal.

_____/s/ Reginald Van Wade_____
REGINALD VAN WADE
Attorney for Defendant-Appellant

i

## <u>REQUEST FOR ORAL ARGUMENT</u>

Mike Cassiano requests oral argument pursuant to Federal Rules of Appellate Procedure 34(a) and Fifth Circuit Rule 34.2.  Cassiano challenges the sufficiency of the evidence against him, contending that the Government failed to produce sufficient evidence establishing he had conducted the affairs of the enterprise in furtherance of the conspiracy, that he committed any of the overt acts, and that he was a member of the conspiracy during the time that the alleged overt acts were committed.  Oral argument would aid the Court by allowing counsel for both parties to point out those portions of the record that support their claims and to answer any factual inquiries that the Court may have.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS …………………………………  i

REQUEST FOR ORAL ARGUMENT ……………………………………….. ii

TABLE OF AUTHORITIES …………………………………………………  iv

SUBJECT MATTER AND APPELLATE JURISDICTION …………………......vi

ISSUES PRESENTED FOR REVIEW …………………………………………...vii

LEGEND …………………………………………………………………………..viii

STATEMENT OF THE CASE ……………………………………………….........1

      1.  Nature of the Case. …………………………………………………...1

      2.  Course of Proceedings and Disposition in the Court Below. …………...3

      3.  Statement of Facts …………………………………………………...........4

SUMMARY OF THE ARGUMENT …………………………………………...........7

ARGUMENTS AND AUTHORITIES …………………………………………..7

    I.      The Government Failed To Prove He was a Member of the Texas Syndicate. …………………………………………………………………………7

STANDARD OF REVIEW …………………………………………………………13

    II.     The Government Failed To Prove He Committed Any Of The Overt Acts. …………………………………………………………………………13

    III.    The Trial Court failed to give an accomplice-witness instruction. ……....20

    IV.    The Trial Court failed to give a use of drugs instruction. ………………..22

    V.    The jury never specifically found that the **Texas Syndicate** affected interstate commerce. ……………………………………………………………….23

CONCLUSION ………………………………………………………………...24

CERTIFICATE OF SERVICE ………………………………………………….......27

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page**

*U. S. v. Bernal,*

814 F.2d 175, 184 (5th Cir. 1987)…… …………………………………………12

*United States v.Brown,*

186 F.3d 661, 664  (5th Cir. 1999)……………………………………... …13

*Burks v. United States,*

*437 U.S. 1, 18 (1978)………………………………………………………………26*

*United States v. Correa-Ventura,*

*6 F.3d 1070, 1076 (5th Cir. 1993) ……………………………………………21*

*Davis v. U.S.,*

*411 F.2d 1126, 1129 (5th Cir. 1969) ……………………………………………15*

*U.S. v. Delgado,*

*401 F.3d 290, 297 (2005) ……………………………………………………23*

*United States v. Grissom,*

*645 F.2d 461, 464 (5th Cir. 1981) ……………………………………………21*

*United States v. Schuchmann,*

84 F.3d 752, 754 (5th Cir. 1996)……………………………………………..13

U.S. v. Skelton,

514 F.3d 433, 438 ……………………………………………………………21

Tillery v. U.S.,

411 F.2d 644, 647 ……………………………………………………12, 15

*In re Winship,*

397 U.S. 358, 364 (1970) …………………………………………………… ….13

**Treatises**

Pattern Jury Instructions (Criminal Cases) Fifth Circuit, 2012 Edition ………….21, 22

**Statutes**

18 U.S.C. §1962 (d)………………………………………………………………..3

18 U.S.C. §1959(a)(5) ………………………………………………………………..3

## SUBJECT MATTER AND APPELLATE JURISDICTION

1. **Subject Matter Jurisdiction in the District Court.**  This case arose from the prosecution of an alleged offense against the laws of the United States.  The District Court exercised jurisdiction under 18 U.S.C. §3231.

2. **Jurisdiction in the Court of Appeals.**  This is a direct appeal from a final decision of the United States District Court for the Western District of Texas, entering judgment of criminal conviction and sentence under the Sentencing Reform Act of 1984.  This Court has jurisdiction of the appeal under 18 U.S.C. §3742 and 28 U.S.C. §1291.

Under Federal Rule of Appellate Procedure 4(b), a criminal defendant who wishes to appeal a district court judgment must file notice of appeal in the district court within 14 days after the entry either of the judgment or order appealed from, or a notice of appeal by the Government.  In this case, judgment was entered on December 18, 2015, and notice of appeal was filed on December 18, 2015.

## <u>ISSUES PRESENTED FOR REVIEW</u>

(1) Whether the Government failed to prove Cassiano was a member of the Texas

Syndicate.

(2) Whether the Government failed to prove he committed any of the Overt Acts.

(3) The Trial Court failed to give the jury a requested accomplice-witness

testimony instruction.

(4) The Trial Court failed to give the jury a requested use of drugs instruction

(5) The jury never specifically found that the Texas Syndicate affected interstate

commerce.

## **<u>LEGEND</u>**

The Electronic Record on Appeal is cited as "ROA" followed by a period, the Fifth

Circuit's case number, another period, and then the page number.

<u>**STATEMENT OF THE CASE**</u>

1. <u>**Nature of the Case**</u>.

On October 7, 2011, Mike Cassiano was arrested on a bench warrant, subsequent to being indicted in this case under R.I.C.O. The arrest warrant was the result of a joint investigation by the Federal Bureau of Investigation and other law enforcement agencies, which began in August 2009.  The investigation targeted the criminal activities of the Texas Syndicate (TS) prison gang.  It was alleged in the indictment that racketeering activity in this case began on or about January 1, 2002, and continued through September 28, 2011.  The indictment alleged that the persons charged, were members, prospects, and associates of the Texas Syndicate.

Mike Cassiano was alleged to be a member of the Texas Syndicate, who held the rank of sillon in 2005.  It was alleged that at various times during the racketeering conspiracy, that Cassiano directed other members of the criminal enterprise in carrying out unlawful activities in furtherance of the Texas Syndicate.

It was alleged during trial that in 2005 a truce was reached between the Texas Mexican Mafia (MM) and the Texas Syndicate, wherein it was agreed that both gangs would coexist in Uvalde, Texas.  It was alleged that on Christmas Eve, 2005 that Mike Cassiano and others were at a bar in Uvalde, Texas, and that there, Cassiano inquired of Mexican Mafia members, whether Jose Guadalupe De La Garza, Jr. was a member of the MM. It was alleged that he was told that De La Garza was not a member of the MM.  On

1

Christmas Day, 2005, De La Garza was shot to death at his residence in Uvalde, Texas. De La **Garza was allegedly targeted because he had stolen property from the Texas Syndicate**. The getaway vehicle allegedly belonged to Mike Cassiano. The getaway vehicle was allegedly driven by Jesse James Polanco, an alleged member of the Texas Syndicate. It was alleged that prior to De La Garza's murder, a TS meeting was held to determine whether De La Garza should be killed. It was alleged that Cassiano held the rank of sergeant at the time, and that he pushed for, and eventually succeeded in, obtaining enough votes to have a "green light" issued for the murder of De La Garza.

Polanco, along with co-defendants Caleb, Josue, and Cristobal Velasquez (brothers), were arrested for the murders. Caleb and Josue admitted to having committed the murders and were convicted of Murder on January 29, 2007. Cristobal Velasquez was convicted of Aggravated Assault Causing Serious Bodily Injury on April 7, 2007. The murder charges against Polanco were dismissed on April 9, 2007, due to insufficient evidence. It was alleged that Cassiano was upset that Polanco had not been convicted for the murder of De La Garza along with the Velasquez brothers. It was further alleged that Cassiano believed Polanco to be an informant, and that he had paperwork showing that Polanco and another individual had implicated him in possessing kilograms of narcotics. It was alleged that once Cassiano returned to prison, that he would send word to the TS that Polanco should be killed.

On November 7, 2009, Sotero Rodriguez Martinez asked Ervey Sanchez

2

to kill Jesse James Polanco.  At the time, both Ervey Sanchez and Polanco were TS prospects. Sotero Rodriguez Martinez told Sanchez that he would become a member if he killed Polanco.  On November 8, 2009, TS members voted to authorize the murder of Polanco.  On November 9, 2009, Jesse James Polanco, Jr. was murdered at the Southwest Livestock Exchange in Uvalde County, Texas.  Ervey Sanchez confessed to killing Polanco on orders of the Texas Syndicate.

It was alleged that Mike Cassiano sold cocaine and had marijuana and heroin smuggled in to him while he was incarcerated in a BOP facility.

On appeal, Cassiano argues that his convictions must be reversed because the Government failed to prove he was a member of the Texas Syndicate; or that he committed any of the alleged Overt Acts.

### 2.   Course of Proceedings and Disposition in the Court Below

Mike Cassiano was charged in a seven-count indictment. (ROA.15-51164.2125) He was specifically charged in Counts 1, 3, and 5.  Count 1 charged him with Conspiracy to Conduct the Affairs of an Enterprise through a Pattern of Racketeering, in violation of 18 U.S.C. §1962(d).  Counts 3 and 5 charged Cassiano with Conspiracy to Commit Murder in Aid of Racketeering, in violation of 18 U.S.C. §1959(a)(5). (ROA.15-51164.2125; 3701)  Mike Cassiano underwent a 5-day jury trial.   He was found guilty on all three counts.(ROA.15-51164.3275-3276)  On Count 1, he was sentenced to life imprisonment.  On Count 3, he was sentenced to 120 months imprisonment.  On Count 5, he was sentenced to 120 months imprisonment.  All three counts were ordered to run concurrently. (ROA.15-51164.3324)

3

**3.** <u>**Statement of Facts**</u>

On October 7, 2011, Mike Cassiano was arrested on a bench warrant, subsequent to being indicted in this case under R.I.C.O. The arrest warrant was the result of a joint investigation by the Federal Bureau of Investigation and other law enforcement agencies, which began in August 2009. (ROA.15-51164.3705-3706)  The investigation targeted the criminal activities of the Texas Syndicate (TS) prison gang. (ROA.15-51164.3706)  It was alleged in the indictment that racketeering activity in this case began on or about January 1, 2002, and continued through September 28, 2011.(ROA.15-51164.2539, 2567)  The indictment alleged that the persons charged, were members, prospects, and associates of the Texas Syndicate. (ROA.15-51164.2567)

Mike Cassiano was alleged to be a member of the Texas Syndicate, who held the rank of sillon in 2005. (ROA.15-51164.2794, 3122) It was alleged that at various times during the racketeering conspiracy, that Cassiano directed other members of the criminal enterprise in carrying out unlawful activities in furtherance of the Texas Syndicate.

It was alleged during trial that in 2005 a truce was reached between the Texas Mexican Mafia (MM) and the Texas Syndicate, wherein it was agreed that both gangs would coexist in Uvalde, Texas. (ROA.15-51164.2713, 2714, 2990-2992)  It was alleged that on Christmas Eve, 2005 that Mike Cassiano and others were at a bar in Uvalde, Texas, and that there, Cassiano inquired of Mexican Mafia members, whether Jose Guadalupe De La Garza, Jr. was a member of the MM. It was alleged that he was told that De La Garza was not

a member of the MM. (ROA.15-51164.2998, 2999, 3002)  On Christmas Day,

2005, De La Garza was shot to death at his residence in Uvalde, Texas.

(ROA.15-51164.3000, 2797)  De La **Garza was allegedly targeted because**

**he had stolen property from the Texas Syndicate**.

The getaway vehicle allegedly belonged to Mike Cassiano. (ROA.15-

51164.2797)  The getaway vehicle was allegedly driven by Jesse James

Polanco, an alleged member of the Texas Syndicate. (ROA.15-51164.2797)  It

was alleged that prior to De La Garza's murder, a TS meeting was held to

determine whether De La Garza should be killed. (ROA.15-51164.2796)  It

was alleged that Cassiano held the rank of sergeant at the time, and that he

pushed for, and eventually succeeded in, obtaining enough votes to have a

"green light" issued for the murder of De La Garza. (ROA.15-51164.2796,

2797)

     Polanco, along with co-defendants Caleb, Josue, and Cristobal Velasquez

(brothers), were arrested for the murders. (ROA.15-51164.2729, 3708, 3221)

Caleb and Josue admitted to having committed the murders and were

convicted of Murder on January 29, 2007. (ROA.15-51164.3708)  Cristobal

Velasquez was convicted of Aggravated Assault Causing Serious Bodily

Injury on April 7, 2007. (ROA.15-51164.3708)  The murder charges against

     Polanco were dismissed on April 9, 2007, due to insufficient evidence.

(ROA.15-51164.3708)  The Texas Syndicate suspected Polanco was an

 informant because he had not been convicted for the murder of De La Garza

along with the Velasquez brothers, and also because he had been brought up

5

on other charges and was let go. (ROA.15-51164.2799) [1]  It was further alleged that Cassiano believed Polanco to be an informant, and that he had paperwork showing that Polanco and another individual had implicated him in possessing kilograms of narcotics. (ROA.15-51164.2874, 2930, 2930, 3125) It was alleged that once Cassiano returned to prison, that he would send word to the TS that Polanco should be killed. (ROA.15-51164.3003, 3004, 3128)

At the time, Ervey Sanchez was a TS prospect. (ROA.15-51164.2802)  TS members voted to authorize the murder of Polanco. (ROA.15-51164.2801)  Ervey Sanchez was selected to murder Polanco because he (Sanchez) had a personal grudge against Polanco. (ROA.15-51164.3129) Sanchez believed Polanco had molested his wife when she was a young girl. (ROA.15-51164.2801,2802)  Sanchez testified that Polanco had him kidnapped. (ROA.15-51164.3128)  On November 9, 2009, Jesse James Polanco, Jr. was murdered at the Southwest Livestock Exchange in Uvalde County, Texas. (ROA.15-51164.3221)  Ervey Sanchez was made a carnal (i.e., member) of the Texas Syndicate, by unanimous consent, because he killed Jesse James Polanco. (ROA.15-51164.2932)  Ervey Sanchez confessed to killing Polanco on orders of the Texas Syndicate. (ROA.15-51164.3002-3003, 3129, 3149) It was alleged that Mike Cassiano sold cocaine. (ROA.15-51164.2797, 2798, 3123, 3124)

On appeal, Cassiano argues that his convictions must be reversed because the Government failed to prove he was a member of the Texas Syndicate, or that he

---

[1] Jesse James Polanco had been an informer for Texas Department of Public Safety Agent David Cabrera from 2008 through 2009.

committed any of the alleged Overt Acts.

## SUMMARY OF THE ARGUMENT

(1) **The Government failed to prove Cassiano was a member of the Texas Syndicate.**

(2) **The Government failed to prove he committed any of the Overt Acts.**

(3) **The Trial Court failed to give the jury a requested accomplice-witness testimony instruction.**

(4) **The Trial Court failed to give the jury a requested use of drugs instruction**

(5) **The jury never specifically found that the Texas Syndicate affected interstate commerce.**

Based solely on the uncorroborated testimony of accomplice witnesses, a jury found Cassiano guilty.  It is for this reason, Cassiano contends that the Government presented insufficient evidence to prove his guilt beyond a reasonable doubt.  This Honorable Court, must, therefore, reverse his conviction.

## ARGUMENT AND AUTHORITIES

(1) **The Government failed to prove Cassiano was a member of the Texas Syndicate.**

**(A) TATTOOS:** Several co-defendants and/or accomplices identified Cassiano at trial, as being a member of the Texas Syndicate.  Part of the evidence that was offered as support for these allegations were alleged Texas Syndicate tattoos on

7

Cassiano. (ROA.15-51164.2734-2736; 2776-2777)[2] Testimony was put on by

Government Expert, Steve Hause of the F.B.I., that the letters "TS" and the sign

of the horn, or "cuerno," were symbols of membership in the Texas Syndicate.

(ROA.15-51164.2691) Agent Hause testified on direct examination that the TS

tattoo on Cassiano's left forearm and left leg meant that he was a member of the

Texas Syndicate. (ROA.15-51164.2735-2736)  But on cross-examination, the

Agent Hause, admitted that a tattoo of horns (i.e., cuernos) doesn't necessarily

denote membership in the Texas Syndicate. (ROA.15-51164.2747-2748)  Agent

Hause testified that it was possible in a small town such as Uvalde, Texas to grow

up around, know, and even hang out with members of the Texas Syndicate, and

still not be a member. (ROA.15-51164.2760) Inez Mata testified on cross-

examination that he was nolonger a member of the Texas Syndicate, but that he

still had Texas Syndicate tattoos. (ROA.15-51164.2823-2824, 2836)  The

implication here was that just the wearing of horns, or even Texas Syndicate

tattoos did not mean a person was a member of the Texas Syndicate.

**(B) <u>JOURNALS, PHOTOGRAPHS, LEDGERS</u>:** Agent Christopher Gonzales,

of the FBI, testified on direct examination, that on September 29, 2011, he conducted a

search of the house of Eli Torres, pursuant to a search warrant. (ROA.15-51164.2656)

One of the items recovered in the search, was a red composition notebook.[3]  (ROA.15-

51164.2657)  Agent Gonzales testified that when he looked in the notebook, he found

telephone numbers, names, positions. (ROA.15-51164.2658)   There was a list of names

---

[2] Government Exhibit 13 is a picture of a tattoo of a longhorn from the Houston Football Team under his neck.  In the picture is also shown the words "Texas Syndicate" tattooed on the left side of his neck. Government Exhibit 16 is a picture of the letters "T" and "S" tattooed on his left forehand. Government Exhibit 12 is a picture of a tattoo of a female torso with the cuerno, and then the word "Texas," and then the cuerno below it, on the inside of the left arm. (ROA.15-51164.2776, 2777) Government Exhibit 15 is a picture of the letters "T" and "S" tattooed on the inside of the bottom part of his left leg.

[3] Government Exhibit No. 43 contained a roster of Texas Syndicate members in Uvalde, Texas. (ROA.15-51164.3115, 3116)

in the notebook, that constituted a list of members of the Texas Syndicate. (ROA.15-51164.2661, 3115) When asked on cross-examination, Agent Gonzales testified that he did not remember reading the name of "Mike Cassiano" in that notebook. (ROA.15-51164.2664) On cross-examination, Agent Steve Hause testified that he reviewed the red notebook, and that he did not see the name of "Mike Cassiano" therein. (ROA.15-51164.2757)

Government Exhibit 47 was a picture of TS members at a member's birthday party. (ROA.15-51164.2807) Government Exhibit 50 was also a picture of TS members. (ROA.15-51164.2810) On cross-examination, Inez Mata testified that Mike Cassiano did not appear in either exhibit. (ROA.15-51164.2839) **Mike Cassiano was alleged to be a ranking member of the Texas Syndicate by co-defendants who had testified for the Government in exchange for a lighter sentence, yet his name never appeared in any ledger or membership roster. He never appeared in any of the TS photographs that were received in evidence**.

### (C) Witnesses Alleging Cassiano was a member of the Texas Syndicate

**Inez Mata:** Mata was charged in Count 1 with Conspiracy To Conduct the Affairs of an Enterprise Through a Pattern of Racketeering. The maximum sentence was punishable by life in prison. He was also charged with Count Seven, Conspiracy to Commit Murder In Aid Of Racketeering. The maximum punishment here was 20 in prison. He pled guilty to Count One and received a sentence of 10 years. (ROA.15-51164.2819-2820) In Count One, he pled guilty of conspiring to kill Rogelio Mata. Rogelio Mata was his cousin. (ROA.15-51164.2824) In essence, he received a ten year sentence for conspiracy to murder his cousin, in aid of racketeering. (ROA.15-51164.2819-2820) He testified that Cassiano was a member of the TS, by stating, "He's a member. He's a member. I just know, you know." (ROA.15-51164.2854.) But Mata never states what he based his assertion that Mike Cassiano is still a member of the TS on. Mata is later shown Government Exhibits 47 and 50. Government Exhibit 47 was a picture of TS members at a member's birthday party. (ROA.15-51164.2807) Government Exhibit 50 was also a picture of TS members. (ROA.15-51164.2810) On cross-examination, Inez Mata testified that Mike Cassiano did not appear in either exhibit. (ROA.15-51164.2839)

9

Other than his testimony, Inez Mata never presented any evidence to corroborate his assertion that Mike Cassiano was a member of the Texas Syndicate.

**Jose Torres:** Was a co-defendant in this case. He pled guilty to Count One, Conspiracy To Conduct the Affairs of an Enterprise Through a Pattern of Racketeering. (ROA.15-51164.3704) The maximum for Count One is life imprisonment. (ROA.15-51164.3730) In exchange for pleading guilty and testifying for the government, he received a sentence of 10 years imprisonment. (ROA.15-51164. 2861-2862) Torres testified that he was a drug dealer. (ROA.15-51164.2892) Torres testified that he used cocaine everyday. (ROA.15-51164.2892) Torres testified that he used drugs during the time he was testifying about. (ROA.15-51164.2892) Torres testified that he had been treated for mental illness. (ROA.15-51164.2893-2895.) Torres was diagnosed as being "bi-polar. (ROA.15-51164.2893) Torres identified Mike Cassiano in court as being a member of the Texas Syndicate. Other than his testimony, he never presented any evidence to corroborate this allegation.

**Charles Esparza:** Was a co-defendant in this case. He pled guilty to Count One, Conspiracy To Conduct the Affairs of an Enterprise Through a Pattern of Racketeering. (ROA.15-51164.3705) The maximum for Count One is life imprisonment. (ROA.15-51164.3730) In exchange for pleading guilty and testifying for the government, he received a sentence cap of 10 to 15 years imprisonment. (ROA.15-51164. 2914) Charles Esparza identified Cassiano at trial as being a member of the TS. (ROA.15-51164.2926-2967) He based his identification of Cassiano as a member of the TS on what he asserted others had told him. His identification of Cassiano as a TS member was not based on personal knowledge. ( ROA.15-51164.2926) Esparza stated that he met Cassiano only one time. (ROA.15-51164.2926, 2940)

10

**Orlando Guerrero:** Was a ranking member of the Texas Mexican Mafia. (ROA.15-51164.2981)  He pled guilty to Racketeering and received a 180-month sentence.  He pled guilty for conspiracy for marijuana and received a 2-year sentence. (ROA.15-51164.2981) He testified that he was a drug dealer. (ROA.15-51164.3011) He testified that he had been convicted of conspiracy to possess and distribute marijuana. (ROA.15-51164.3011)  He testified that he had been convicted of conspiracy to possess cocaine with intent to distribute. (ROA.15-51164.3011)  He testified that he had engaged in extortion. (ROA.15-51164.3011)   He testified on cross-examination that he had participated in the murder of a man named "Pos Pos." (ROA.15-51164.3015) He testified that the victim was stabbed, and buried alive. (ROA.15-51164.3015, 3018)  He testified that he murdered a man named, "Chuy Briones." (ROA.15-51164.3016)  Orlando Guerrero identified Cassiano at trial as being a member of the TS. (ROA.15-51164.2994-2995) Other than his testimony, he never presented any evidence to corroborate this allegation.

**Ervey Sanchez:** Was a co-defendant in this case.  He pled guilty to Count One, Conspiracy To Conduct the Affairs of an Enterprise Through a Pattern of Racketeering. (ROA.15-51164.3705)  The maximum for Count One is life imprisonment. (ROA.15-51164.3730)  As part of the factual basis of his R.I.C.O. conviction he participated in a murder. (ROA.15-51164.3112)  In exchange for his cooperation with the government he received a sentence cap of 20 years. (ROA.15-51164.3112)  He murdered Jesse James Polanco in order to become a member of the Texas Syndicate. (ROA.15-51164.2932, 3138, 3142) Another reason he had for murdering Polanco was that he believed that Polanco had molested his (i.e., Sanchez') wife when she was a child. (ROA.15-51164.3144) Ervey Sanchez identified Cassiano at trial as being a member of the TS. (ROA.15-51164.3122-3123) Other than his testimony, he never presented any evidence to corroborate this allegation.

**Ramon Rodriguez,** testified on direct examination that he was a member of the Texas Syndicate. (ROA.15-51164.3094)  Rodriguez testified that he was an active TS member in Florida at some point. (ROA.15-51164.3095)  Rodriguez testified that he had been a

11

member of the Texas Syndicate for twenty-five (25) years. (ROA.15-51164.3094)
Rodriguez testified that he moved to Uvalde, Texas from Florida in 2010. (ROA.15-51164.3094, 3095)  Rodriguez testified that the TS members in Uvalde that he personally knew were Fat Boy, Big John, Yogi, June, Big Lou, George Sanchez. (ROA.15-51164.3096)  When asked, he testified that he did not *ever* know Mike Cassiano. (ROA.15-51164.3097)  Throughout the trial the Government makes Cassiano to be a big wheel, a "sillon" in the TS, yet a member who has 25 years in, and who identified other Uvalde members of TS, had never even heard of Cassiano.

In each instance there was no corroboration.  There was not sufficient indicia of reliability to support the testimony of these witnesses.  Accomplice testimony should always be scrutinized carefully by the jury because of its inherent untrustworthiness. Tillery v. U.S., 411 F.2d 644, 647  Defendant was entitled to instruction on accomplice testimony where testimony of accomplice presented the only direct evidence of defendant's knowledge of criminal activity and was entirely uncorroborated.  In U.S. v. Bernal, 814 F.2d 175, 184 (5th Cir. 1987), *this* Honorable Court held that because, "… Maldonado's testimony about Bernal's knowing participation in the fraud was entirely uncorroborated and was not directly supported by unequivocal circumstantial evidence that was equally effective in controverting Bernal's defense,"[4] along with the fact that there existed testimony contradicting Maldonado's testimony, that Bernal was entitled to a cautionary instruction on accomplice-witness testimony.  In the case-at-bar, in each instance, the respective witnesses' testimony was uncorroborated in that it was not supported by any independent evidence other than perhaps the uncorroborated testimony of other accomplice-witnesses.  Each of these witnesses was of dubious character // of dubious credibility.  Each of these witnesses had a motive to lie.  That is to say, they testified against Cassiano in order to receive a lighter sentence.  The failure of the Honorable District Court to sua sponte give any accomplice testimony instruction, under *these* facts, materially affected the jury's decision.  This was not harmless error.

---

[4] U.S. v. Bernal, 814 F.2d 175, 184 (5th Cir. 1987)

### A.  Standard of Review

To convict an accused, the Government must prove each element of the charged offense beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364 (1970).  This Court considers "the countervailing evidence as well as the evidence that supports the verdict" in assessing sufficiency of the evidence. United States v. Brown, 186 F.3d 661, 664 (5th Cir. 1999) (internal citation and quotation omitted).  "If 'the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, a defendant is entitled to a judgment of acquittal." Id. (quoting United States v. Schuchmann., 84 F.3d 752, 754 (5th Cir. 1996))

### (2)  The Government failed to prove he committed any of the Overt Acts.

### (A) The evidence is insufficient to show that Cassiano murdered Jose Guadalupe De La Garza

**Inez Mata** testified that Cassiano pushed for the murder of Jose Guadalupe De La Garza, and that he was acting as sillon. (ROA.15-51164.2796, 2797)  Mata testified that the actual murderers had used Cassiano's truck. (ROA.15-51164.2797, 2798)  Mata testified that Cassiano had "pushed for" De La Garza's murder. (ROA.15-51164.2796, 2797) With respect to Cassiano's truck, no evidence was presented that Cassiano had given permission for his truck to be used.  Mata testified that Cassiano was selling drugs in 2005. (ROA.15-51164.2797, 2798)  Other than his testimony, Mata never presented any evidence to corroborate his allegations.  On cross-examination he testified that Cassiano was not in Government Exhibits 47 and 50 (which were pictures of members of the Texas Syndicate. (ROA.15-51164.2837, 2839) Mata testified on cross-

13

examination that during the time of the De La Garza murder, that he, (i.e., Mata) was using drugs on a daily basis. (ROA.15-51164.2839, 2840) Mata testified on cross-examination that he was a drug-dealer. (ROA.15-51164.2841, 2847) Mata testified on cross-examination that he was a hustler. (ROA.15-51164.2842) Mata testifies on re-cross that he was testifying in exchange for a benefit. (ROA.15-51164.2857, 2858) Other than his testimony, Inez Mata never presented any evidence to corroborate his assertion that Cassiano had "pushed for" De La Garza's murder.

**Jose Torres** testified that Mike Cassiano did <u>not</u> murder Jose Guadalupe De La Garza. (ROA.15-51164.2891)

**Daniel Rodriguez** of the Uvalde Police Department testified on cross-examination that the police never recovered any evidence from the crime scene that Mike Cassiano had ever been at the De La Garza crime scene. (ROA.15-51164.2911) Officer Rodriguez went on to state that he had no evidence that Mike Cassiano killed Jose Guadalupe De La Garza. (ROA.15-51164.2911)

**Orlando Guerrero** testified that Mike Cassiano had gone into to a bar to seek permission to kill Jose Guadalupe De La Garza. (ROA.15-51164. 2998, 2999, 3001) Guerrero never presented any evidence to corroborate this allegation. On cross-examination, Guerrero testified that whatever he knows about the De La Garza murder was what he was told. (ROA.15-51164.3017)

**Ervey Sanchez** testified that Mike Cassiano was a sillon the night before the De La Garza murder. (ROA.15-51164.3122, 3142) Sanchez testified that Cassiano was a member of the Texas Syndicate while he was in prison. (ROA.15-51164.3124) Sanchez testified that he talked to Cassiano on the phone

14

while he was in prison. (ROA.15-51164.3124) Sanchez testified that Cassiano was selling narcotics around the years 2005 and 2006. (ROA.15-51164.3124) Other than his testimony, he never presented any evidence to corroborate his allegations.  On direct examination, Sanchez was shown Government Exhibit No. 43 which contained a roster of Texas Syndicate members in Uvalde, Texas. (ROA.15-51164.3115, 3116)  Sanchez testified that Cassiano's name did not appear in the roster. (ROA.15-51164.3116)

**Katherine Gutierrez** of the FBI, and case agent, testified that Mike Cassiano was incarcerated during the entire time of the investigation. (ROA.15-51164.3161, 3214)  She also testified that Cassiano was still active in the Texas Syndicate during his incarceration. (ROA.15-51164.3161, 3162)  However, she never states what she based this assertion on.

In each instance there was no corroboration.  There was not sufficient indicia of reliability to support the testimony of these witnesses.  There was no direct evidence against Cassiano.  All of the evidence that formed the basis of his conviction derived from the testimony of co-defendants and accomplices who were testifying in exchange for a lighter sentence.  At best, the only *corroboration,* was the testimony of other co-defendants and accomplices, whose testimony itself, was uncorroborated.  In sum and substance, it was the testimony of drug dealers, drug addicts, and murderers.  **\*\*\*\*\*** Accomplice testimony should always be scrutinized carefully by the jury because of its inherent untrustworthiness. Tillery v. U.S., 411 F.2d 644, 647  "the general rule in federal courts is that a conviction may rest on the uncorroborated testimony of an accomplice if it is not incredible or otherwise unsubstantial on its face.  It is the better practice, however, to caution juries against too much reliance upon the testimony of an accomplice and to require corroboration before giving credence to such evidence.  Although the giving of such an instruction is within the court's discretionary powers, the failure to give the warning may constitute reversible error in close evidentiary situations. Davis v. U.S., 411 F.2d 1126, 1129 (5th Cir. 1969)  Failure of the District Court to sua sponte give any accomplice testimony

15

instruction, under these facts materially affected the jury's decision.  This was not harmless error.

### (B) The evidence is insufficient to show that Cassiano murdered Jesse James Polanco.

**Inez Mata** testified that Mike Cassiano wanted to have Jesse James Polanco killed. (ROA.15-51164.2799, 2801)  Mata testified that Cassiano was pushing for the murder of Polanco from jail in Louisiana. (ROA.15-51164.2800, 2875)  On cross-examination Mata admitted that it takes a "junta" to order a hit.  One person cannot order a hit. (ROA.15-51164.2834)  Mata admitted on cross-examination that Mike Cassiano was in prison when the murder of Jesse James Polanco took place. (ROA.15-51164.2834, 2835)  Mata testified that if a member is in prison, he can't conduct Texas Syndicate business. (ROA.15-51164.2835)  Mata testified that a person can wear Texas Syndicate stamp and yet not be a member. (ROA.15-51164.2836)

**Jose Torres** testified that Mike Cassiano pressed the issue of having Jesse James Polanco killed. (ROA.15-51164.2875)  Torres testified that Cassiano showed him (i.e., Torres) some paperwork that he (i.e., Cassiano) maintained showed that Jesse James Polanco had snitched on him during a drug conspiracy. (ROA.15-51164.2873)  Torres stated, however, that Polanco's name did not appear in the document. (ROA.15-51164.2875)  No evidence was ever presented to corroborate Torres' assertions.  On cross-examination Torres testifies that Cassiano did not murder De La Garza. (ROA.15-51164.2891)  Torres testifies that Cassiano did not murder Jesse James Polanco. (ROA.15-51164.2891)  Torres testified that he was a drug dealer dealing in marijuana and cocaine. (ROA.15-51164.2892)  Torres testified that he used cocaine daily.

16

(ROA.15-51164.2892)  Torres testified that he was using these drugs during the time he was testifying about. (ROA.15-51164.2892, 2893)  Torres testified that he had been treated for mental illness, and that he had been diagnosed as being bipolar. (ROA.15-51164. 2893-2895)

      **Charles Esparza** identified Mike Cassiano as a member of the Texas Syndicate. (ROA.15-51164.2926, 2927)  However, on cross-examination, Esparza testified that he only met him once. (ROA.15-51164.2940)  Esparza testified that he never attended any meetings where Mike Cassiano was present. (ROA.15-51164.2940)  Esparza testified on direct examination that Mike Cassiano stated that Jesse James Polanco was no good because he had paperwork on him and that he was planning to send the paperwork to them in Uvalde. (ROA.15-51164.2930)  Esparza testified that Cassiano believed that Polanco was cooperating with law enforcement. (ROA.15-51164.2931)  **However, Esparza testified on direct and cross-examination that he overheard Cassiano state that Polanco should be "put to the side." (ROA.15-51164.2930, 2942)  Esparza testified that "put to the side" meant to *not* kill. (ROA.15-51164.2942)  Esparza testified on cross-examination that he had no personal knowledge that Mike Cassiano ever took part in the De La Garza or the Polanco murders. (ROA.15-51164.2941)  Esparza testified that Cassiano was not present at the August 14, 2010 meeting.** (ROA.15-51164.2943)[5]  On cross-examination Esparza testified that he sold cocaine, that he used a lot of cocaine in that he "… snorted it, shot it up, and smoked it. (ROA.15-51164.2939)  Esparza testified that he was high much of the time. (ROA.15-

---

[5] It was alleged in the indictment that on August 14, 2010 members of the Texas Syndicate held a meeting during which it was decided and agreed that Ramon Rodriguez, a/k/a "Spider" would be killed. (ROA.15-51164.2574)  The Texas Syndicate members in Uvalde had contemplated killing Rodriguez because he was a member of an offshoot of the Texas Syndicate (i.e., "TSO") that they considered to be their enemy. (ROA.15-51164.2933, 2934)

17

51164.2939)  Esparza testified that he smoked weed every chance he got. (ROA.15-51164.2939)  Esparza testified that he took part in a decision to kill someone. (ROA.15-51164.2940)

**Orlando Guerrero** testified that he was in the Val Verde Detention Center in 2008 with Mike Cassiano, and that Cassiano told him that Jesse James Polanco had informed on him, and that as soon as he (i.e., Cassiano) got to prison, he was going to put a hit on him. (ROA.15-51164.3003, 3004)  Other than his testimony, he never presented any evidence to corroborate this allegation.  Inez Mata, however, testified that it takes a "junta" to order a "hit." (ROA.15-51164.2834)  Further, he testified that one person could not order a hit. (ROA.15-51164. 2834)  Mata admitted on cross-examination that Mike Cassiano was in prison when Jesse James Polanco was murdered. (ROA.15-51164.2834, 2835)  Mata testified that if a member is in prison, he can't conduct Texas Syndicate business. (ROA.15-51164.2835)  Guerrero testified that Ervey Sanchez told him that he (i.e., Sanchez) was a member of the TS because he killed Jesse James Polanco. (ROA.15-51164.3002, 3003)  Guerrero testified that he had no personal knowledge that Mike Cassiano murdered Jesse James Polanco. (ROA.15-51164.3025)

**Ervey Sanchez** testified that Mike Cassiano was a sillon at one time. (ROA.15-51164.3122)  Sanchez testified that Cassiano was a member of the TS during the time he was in prison, and that he talked to him on the phone while he was in prison. (ROA.15-51164.3124)  Sanchez testified that Cassiano was selling narcotics around the year 2005 or 2006. (ROA.15-51164.3124)  Sanchez testified that Cassiano was saying that Jesse James Polanco was a snitch, and that he (i.e., Cassiano) wanted to get rid of him.  Other than his testimony, he never presented any evidence to corroborate these allegations.

18

(ROA.15-51164.3125)   When, on direct examination he was shown Exhibit 43, Sanchez testified that Cassiano's name was not listed in the roster. (ROA.15-51164.3116)  On cross-examination Sanchez testified that he was a drug-dealer. (ROA.15-51164.3135) Sanchez testified that he sold cocaine for ten years.  Sanchez stated that he used cocaine and marijuana during the time he was testifying about. (ROA.15-51164.3136)  Sanchez stated he was testifying on behalf of the government in order to get a lighter sentence. (ROA.15-51164.3137-3138)  Sanchez admitted that he murdered Jesse James Polanco. (ROA.15-51164.3138)  Sanchez admitted that Cassiano did not kill Jesse James Polanco. (ROA.15-51164.3138)  Sanchez admitted that he was rewarded for  killing Polanco by being made a member of the Texas Syndicate. (ROA.15-51164.3138)  Sanchez admitted that Cassiano did not kill Jose Guadalupe De La Garza. (ROA.15-51164.3139)  Sanchez testified that he had a personal reason for killing Jesse James Polanco.  Sanchez testified that the personal reason was that Polanco had molested his (i.e., Sanchez') wife when she was a child. (ROA.15-51164.3144)  Another reason Sanchez had for killing Polanco was that Polanco had set him up in Kerville, Texas, by taking all of his belongings and leaving him stranded there. (ROA.15-51164.3149)

**Katherine Gutierrez** testified on cross-examination that Ervey Sanchez, not Mike Cassiano, killed Polanco. (ROA.15-51164.3212-3214)  Agent Gutierrez testified that Sanchez was made a member of the Texas Syndicate because he had murdered Jesse James Polanco. (ROA.15-51164.3212)  Agent Gutierrez testified that Ervey Sanchez had personal issues with Jesse James Polanco. (ROA.15-51164.3212)  Agent Gutierrez testified that one of the personal issues Sanchez had with Polanco had to do with allegations that Polanco had molested his (i.e., Sanchez') wife when she was younger.

19

(ROA.15-51164.3212, 3213)  Agent Gutierrez stated that she recalled that Sanchez had stated, "It feels good to kill people.  It feels good to kill people, even when you hate them.  Especially when you hate them." (ROA.15-51164.3214)

Here again, in each instance there was no corroboration.  There was not sufficient indicia of reliability to support the testimony of these witnesses.  There was no direct evidence against Cassiano.  All of the evidence that formed the basis of his conviction derived from the testimony of co-defendants and accomplices who were testifying in exchange for a lighter sentence.  At best, the only *corroboration,* was the testimony of other co-defendants and accomplices, whose testimony itself, was uncorroborated.  In sum and substance, it was the testimony of drug dealers, drug addicts, and murderers.  For this reason, Cassiano should have received an accomplice-witness instruction.  This failure materially affected the jury's decision, because unfiltered, the jury was allowed to rely on the infirmed, inherently unreliable, uncorroborated *testimony* of witnesses who had every reason in the world to lie.  Failure of the District Court to sua sponte give any accomplice testimony instruction, under these facts materially affected the jury's decision.  This was not harmless error.

### (3) The Trial Court failed to give the jury a requested accomplice-witness testimony instruction.

Defense Counsel requested an accomplice-witness instruction. (ROA.15-51164.3258)  The request was discussed and granted during the charging conference. (ROA.15-51164.3258, 3259)  A request was also made for an instruction on use of addictive drugs.  This request was also discussed and granted during the charging conference. (ROA.15-51164.3259)  However, when looking at the "Instruction to the

Jury," Defense Counsel can find no such instruction. (ROA.15-51164.2529-2554) So it may be that INADVERTENTLY these instructions may have failed to reach the jury. If this is the case, this is not harmless error. We review the refusal to give a defense-tendered jury instruction for abuse of discretion. (U.S. v. Skelton, 514 F.3d 433, 438 (quoting United States v. Correa-Ventura, 6 F3d 1070, 1076 (5th Cir. 1993) When overruling a proposed jury instruction, a court commits reversible error where (1) the requested instruction is substantially correct; (2) the requested issue is not substantially covered in the charge; and (3) the instruction concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a given defense. (U.S. v. Skelton, 514 F.3d 433, 445 (5th Cir. 2008) (quoting United States v. Grissom, 645 F.2d 461, 464 (5th Cir. 1981).

The instruction should have been "Accomplice-Co-Defendant-Plea Agreement," 1.15 of the "Pattern Jury Instructions (Criminal Cases) Fifth Circuit, 2012 Edition. In applicable part this instruction states:

*… An alleged accomplice, including one who has entered into a plea agreement with the government, is not prohibited from testifying. On the contrary, the testimony of such a witness may alone be of sufficient weight to sustain a verdict of guilty. You should keep in mind that such testimony is always to be received with caution and weighed with great care. You should never convict a defendant upon the unsupported testimony of an alleged accomplice unless you believe that testimony beyond a reasonable doubt.*

In the case-at-bar, the requested instruction on accomplice-witness testimony was not substantially covered in the charge actually submitted to the jury. The issue of the reliability of accomplice-witness testimony concerned an important point in the trial,

21

because the Government's case rested almost entirely on the testimony of accomplice-witnesses. There was no direct evidence corroborating the allegations they made. Cassiano was facing a Life Sentence if convicted. These accomplice-witnesses admitted under *oath* to being chronic users of drugs; to being drug dealers, and even murderers. They were all facing harsh sentences prior to their having cooperated with the Government. They admitted under oath that they were testifying in exchange for a lighter sentence. Ervey Sanchez actually pulled the trigger in the murder of Jesse James Polanco. In exchange for his cooperation, he received a sentence cap of 20 years. Mike Cassiano killed no one. His sentence is life in prison. The failure to give *this* instruction prevented the jury from understanding that *this* type of testimony *must* be weighed with *caution*. The failure to give this instruction seriously impaired the defendant's ability to effectively present his defense. This was reversible error.

### (4) The Trial Court failed to give the jury a requested use of drugs instruction.

Inez Mata, Jose Torres, Charles Esparza, and Ervey Sanchez all testified that they were using drugs during the time about which they were testifying. A request was made for an instruction on use of addictive drugs. This request was discussed and granted during the charging conference (ROA.15-51164.3259) However, when looking at the "Instruction to the Jury," Defense Counsel can find no such instruction. (ROA.15-51164.2529-2554)

Here, the instruction should have been "Witness's Use of Addictive Drugs," 1.16 of the "Pattern Jury Instructions (Criminal Cases) Fifth Circuit, 2012 Edition.

In applicable part this instruction states:

> *The testimony of a witness who is shown to have used addictive drugs during the period of time about which the witness testified **must always** be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses.*

> *You should **never** convict any defendant upon the **unsupported testimony** of such a witness unless you believe that testimony beyond a reasonable doubt.*

In the case-at-bar, these witnesses testified to having used cocaine, a highly addictive drug, on a daily basis, during the time about which they were testifying.

The requested instruction would have been substantially correct; (2) the requested issue was not substantially covered in the charge; and (3) the instruction concerned an important point in the trial so that the failure to give it *did* seriously impair the defendant's ability to effectively present his defense.

The failure to give *this* instruction prevented the jury from understanding that *this* type of testimony *must* be weighed with *caution*.  This was reversible error.

**V.**  The jury never **specifically found** that the **Texas Syndicate** affected interstate commerce.

Count 1 of the indictment alleges: "The enterprise was engaged in, and its activities affected, interstate **and** foreign commerce." (ROA.15-51164.2556)  It is Defendant's position that the indictment **specifically alleged** that the **Texas Syndicate** affected interstate commerce, and that, therefore, the jury had to **specifically find** that the Texas Syndicate was engaged in, and that its activities affected, interstate **and** foreign commerce.

In <u>U.S. v. Delgado</u>, 401 F.3d 290, 297 (2005), *this* Honorable Court held that, "To

23

establish a violation of Racketeer Influenced and corrupt Organizations Act (R.I.C.O.) provision prohibiting conduct of enterprise's affairs through a pattern of racketeering activity, government must prove (1) the existence of an enterprise that affects interstate or foreign commerce, (2) that the defendant was employed by or associated with the enterprise, (3) that the defendant participated in the conduct of the enterprise's affairs, and (4) that the participation was through a pattern of racketeering activity.

In In re Winship, 397 U.S. 358, 364 (1970), the U.S. Supreme Court held the Due Process Clause requires the prosecution prove each element of a crime beyond a reasonable doubt. "We explicitly hold that the Due Process Clause protects the accused against a conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."

Element #1 was an element of the offense specifically alleged in the indictment, that the jury did *not* specifically find. The jury specifically found that *Mike Cassiano* committed racketeering acts that constituted interference with interstate or foreign commerce through extortion, but the jury *never* specifically found that the *Texas Syndicate* was engaged in, and that *its* activities affected, interstate **and** foreign commerce. (ROA.15-51164.2594) Therefore, the Government failed to prove *each* element of the offense specifically alleged in the indictment beyond a reasonable doubt. That being the case, this conviction violates Cassiano's 14th Amendment right to Due Process. The conviction, therefore, should be reversed.

## CONCLUSION

There was never any physical evidence to connect Mike Cassiano to any of the allegations made against him. He was never found with any drugs. He was never at the

scene of any murder.  He never murdered anyone.  The only evidence adduced against

him at trial, was the uncorroborated testimony of co-defendants and accomplices who

were testifying in exchange for a lighter sentence.  The only *corroboration*, if it can even

be called that, was the testimony of other co-defendants and accomplices who were

themselves testifying in exchange for a lighter sentence.  This Honorable Court has

recognized that such evidence is inherently suspect, and that it is advisable, in some

situations that the jury be given an instruction to that effect.  This Honorable Court has

held that in such instances, the Trial Court, should sua sponte give such an instruction.

This Honorable Court has held that failure to do so, can, in some instances constitute

reversible error.  The Honorable Trial Court failed to give this instruction.

At the charging conference, Defense Counsel *specifically requested* that the jury

receive an *accomplice-witness instruction*.  The request was verbally granted,  but the

jury instructions as they appear in the record, do not reflect that any such instruction was

ever received by the jury.

During the trial, each of these co-defendants/accomplices was asked if they had

been using drugs during the time about which they were testifying.  Each co-

defendant/accomplice testified that they had.  At the charging conference, Defense

Counsel *specifically requested* that the jury receive an instruction on *use of drugs.*  The

request was verbally granted, but the jury instructions as they appear in the record, do not

reflect that any such instruction was ever received by the jury.

Finally, Count 1 of the indictment *specifically alleges* that the *Texas Syndicate*

affected interstate commerce.  As charged in the indictment, that was one of the elements

of the offense the Government was required to prove.  However, the jury never ruled on

that element of the offense.  The jury never made a specific finding that the Texas

Syndicate had affected interstate commerce.  Therefore, the Government failed to prove

*each* element of the offense specifically alleged in the indictment beyond a reasonable

doubt.  That being the case, this conviction violates Cassiano's 14th Amendment right to

Due Process.

 FOR THESE REASONS, Cassiano's conviction should be reversed and the case

dismissed with prejudice. *See* <u>Burks v. United States</u>, 437 U.S. 1, 18 (1978)


 Respectfully submitted.

      _____/s/__Reginald Van Wade_____

      REGINALD VAN WADE,

      123 Meandering Way

      Del Rio, Texas 78840

      (830) 768-2509

      (830) 768-2509 (fax)

      ATTORNEY FOR DEFENDANT-APPELLANT

      MIKE CASSIANO

26

**CERTIFICATE OF SERVICE**

On October 11, 2016, I electronically filed this Brief with the Clerk of the Court

using the CM/ECF system which will send notification of such filing to Richard Durbin,

Jr., U.S. Attorney for the Western District of Texas (Attn: Assistant U.S. Attorney

Joseph H. Gay, Jr.), by electronic mail.


　　　　　　　　　　　　　　/s/  Reginald Van Wade

REGINALD VAN WADE,

ATTORNEY FOR DEFENDANT-APPELLANT

MIKE CASSIANO

27